

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------

ROBERT G. RAPA,

        Plaintiff,

      v.

THE CITY OF NEW YORK, NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION,
and OFFICER JOSE ALMONTE,

        Defendants.

------------------------------------------------

CIV. NO.

ECF

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff, ROBERT G. RAPA, by and through his undersigned counsel, EISENBERG &
BAUM, LLP, as and for his Complaint against Defendants, THE CITY OF NEW YORK, NEW
YORK CITY HEALTH AND HOSPITALS CORPORATION, and OFFICER JOSE ALMONTE,
hereby alleges as follows:

### PRELIMINARY STATEMENT

1.     Robert Rapa is a deaf individual whose primary and preferred means of
communication is American Sign Language (ASL). When Mr. Rapa sought the assistance of the
New York City Police Department (NYPD) after he had been robbed, NYPD Officer Jose Almonte
wrongfully arrested him, instead of the perpetrator of the crime. The NYPD failed to take any steps
to ensure effective communication with Mr. Rapa. The NYPD held Mr. Rapa in jail for hours,
without attempting to procure an interpreter or any other means of communicating with him. Mr.
Rapa also suffers from Parkinson's disease. While spending the night in custody without his

1

Parkinson's medication, Mr. Rapa experienced uncontrollable shaking. Eventually, after several hours of intense shaking, the NYPD transported Mr. Rapa to Lincoln Medical Center, which also failed to provide an interpreter or otherwise take any steps to accommodate his disability. Mr. Rapa was treated and taken back into police custody, and was released from custody shortly thereafter, with no charges being filed. Mr. Rapa alleges that both the NYPD and Lincoln Medical Center discriminated against him and failed to accommodate his disability, leading to his unlawful arrest and confinement, and the deprivation of the right to understand and participate in his medical care. This traumatic experience exacerbated Mr. Rapa's existing medical condition and caused him severe emotional distress.

2.      The NYPD's failure to accommodate Mr. Rapa's disability represents a continuing violation that has persisted for many years. In response to numerous complaints from deaf individuals, the United States of America took action against the NYPD, and the two parties entered into a Settlement Agreement on November 18, 2009. This Settlement Agreement required the NYPD to maintain a list of on-call qualified sign language interpreters, available 24 hours a day, to be provided within a reasonable time after a request for one is made. The Settlement Agreement further instructed the NYPD to train its officers on the communication needs of deaf individuals and their right to be free from discrimination and to receive equal access to government services. However, the NYPD has continued to ignore the rights of deaf individuals, leading to additional complaints and lawsuits. For example, in Williams v. City of New York, No. 12-CV-6805 (S.D.N.Y., filed September 7, 2012), the Plaintiff, a deaf woman, was arrested and thrown in jail overnight. The NYPD never accommodated her in any way, even though she had committed no arrestable offense, and even though it was she who had called for police assistance. During her incarceration, she required hospital care due to panic attacks that she suffered due to the inhumane

treatment and lack of communication. Likewise, in this case, even though it was Mr. Rapa who sought the help and protection of police, he ended up being arrested due to the NYPD's failure to accommodate his disability.

## NATURE OF THE CLAIMS

3.      Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from their services. Plaintiff seeks declaratory and equitable relief, monetary damages, and attorneys' fees to redress Defendants' unlawful discrimination on the basis of disability in violation of the United States Constitution, pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and its implementing regulation, 28 C.F.R. Part 35; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791; the New York Human Rights Law (NYHRL), N.Y. Exec. L. § 290, et seq.; the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-101, et seq.; and other state and common law causes of action.

## THE PARTIES

4.      Plaintiff ROBERT G. RAPA (hereinafter "Plaintiff" or "Mr. Rapa") is an individual residing at 727 Bronx River Road, Bronxville, New York. Mr. Rapa is profoundly deaf and communicates primarily in American Sign Language. He is substantially limited in the major life activities of hearing and speaking, and is a qualified person with a disability within the meaning of the ADA, the Rehabilitation Act, the NYHRL, and the NYCHRL.

5.      Defendant THE CITY OF NEW YORK is a duly incorporated municipality of the State of New York, whose seat of governance was and still is located at City Hall Park, New York, New York.

6.    The New York City Police Department (NYPD) is a municipal police force and a governmental agency of The City of New York.

7.    Defendant JOSE ALMONTE, during the time period relevant to this Complaint, was an officer of the NYPD.

8.    Defendant NEW YORK CITY HEALTH AND HOSPITALS CORPORATION (HHC) is a public benefit corporation created by law and an employer engaged in the practice of medicine, with a principal place of business located at 125 Worth Street, New York, New York.

9.    Lincoln Medical Center is an HHC constituent hospital located at 234 Eugenio Maria De Hostos Boulevard (East 149th Street), Bronx, New York.

10.    Defendants The City of New York and New York City Health and Hospitals Corporation are each public entities and recipients of federal financial assistance, thus making each entity identified above subject to the requirements of both the ADA and the Rehabilitation Act.

## JURISDICTION & VENUE

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under Title II of the ADA, 42 U.S.C §§ 12131, et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. This Court has supplemental jurisdiction over Plaintiff's state and local law claims under 28 U.S.C. § 1367.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the claims occurred in, and the parties all reside within the jurisdiction of, the United States District Court for the Southern District of New York.

## CONDITION PRECEDENT

13.     To the extent required under N.Y. GMU. Law § 50-e, Plaintiff obtained leave of court to file Notices of Claim against Defendants in this matter on January 21, 2014, and did so file those Notices of Claim.

14.     Pursuant to the requirements of N.Y. C.P.L.R. § 217(a), this Complaint is timely because it was filed within one year and ninety days of the alleged unlawful incidents.

15.     Therefore, Plaintiff has satisfied all conditions precedent to the filing of this Complaint.

## STATEMENT OF FACTS

16.     Robert Rapa is profoundly deaf and speech-impaired, and can only effectively communicate via American Sign Language (ASL).

17.     Mr. Rapa has also suffered, and still suffers, from Parkinson's disease since approximately 2007, a condition for which he regularly seeks treatment from Burton Rindfleish, M.D. of Yonkers, New York.

18.     During the evening of April 1, 2014, Mr. Rapa was lawfully driving his vehicle in the vicinity of Longwood Avenue in the Bronx when a woman reached into the open window of his vehicle and stole some items from his wallet, which was sitting on the dashboard.

19.     This woman then ran into a building and entered an apartment, which Mr. Rapa assumed was her own.

20.     Mr. Rapa attempted to follow her to demand return of his stolen possessions, but the woman closed the door.

21.     Mr. Rapa then went to the NYPD's 41st Precinct to report this robbery, and gestured for the police officers to accompany him back to the woman's apartment.

22.     Mr. Rapa, accompanied by police officers, including Officer Jose Almonte, then returned to the apartment.

23.     The woman then apparently falsely accused Mr. Rapa of attempting to break into her apartment.

24.     Due to Mr. Rapa's inability to effectively communicate with the police officers, Officer Almonte arrested him on the false accusation of the woman.

25.     At the time of his arrest, Mr. Rapa was not told, and had no idea, why he was arrested.

26.     Mr. Rapa was taken back to the 41st Precinct and kept in custody.

27.     The NYPD did not provide an interpreter, or any other form of accommodation to ensure effective communication, to Mr. Rapa.

28.     Mr. Rapa was not told why he was in custody, or how long he would be there.

29.     Mr. Rapa carries medication with him at all times for his Parkinson's disease, and must take this medication 6 times a day.

30.     At some point during his incarceration, Mr. Rapa witnessed a swarm of NYPD officers enter his cell and beat his cellmate with fists and clubs, for reasons he did not fully understand, causing him to feel extreme anxiety and stress.

31.     After Mr. Rapa had been in custody for over 12 hours, he attempted to advise the police that he needed his medication, but they refused to give it to him.

32.     Mr. Rapa began shaking uncontrollably due to the NYPD's withholding of the medication for his Parkinson's disease.

33.     NYPD officers eventually transported Mr. Rapa to Lincoln Medical Center for treatment of his Parkinson's symptoms.

34.     Lincoln Medical Center failed to procure an interpreter or otherwise accommodate Mr. Rapa's disability to ensure effective communication with him.

35.     As a result, even though Mr. Rapa was treated at Lincoln Medical Center, he does not know what treatment he received and was unable to give informed consent.

36.     After being treated, Mr. Rapa was taken back to the 41st Precinct, and was released sometime on April 2, 2014 without being charged with any crime.

37.     As a result of this ordeal, and through the days and weeks that followed, Mr. Rapa sought care and treatment from Dr. Rindfleish due to a marked exacerbation of his medical condition.

38.     Mr. Rapa still suffers residual health effects from this experience, during which he was falsely arrested, denied effective communication, incarcerated, and denied necessary medication for a serious health condition.

39.     With deliberate indifference to the rights of citizens to be free from discrimination in law enforcement, the Defendant City and its officers have encouraged, tolerated, ratified, and acquiesced to police discrimination by: failing to conduct sufficient training or supervision with respect to the rights of citizens to be free from discrimination in law enforcement; by failing to adequately punish disability-based discrimination; by tolerating discrimination among the police force and in police decisions; and by failing to properly investigate citizen complaints of discrimination.

40.     It is the longstanding, widespread, deliberately indifferent custom, habit, practice and/or policy of the Defendant City to permit police officers to use disability as a motivating factor in police decisions and actions, as well as to fail to supervise and to train deputies in the rights of citizens to be free from such disability discrimination in law enforcement.

41.     As a result of the actions and/or inactions of Lincoln Medical Center and its physicians or staff, Mr. Rapa was denied information that is readily and routinely provided to hearing persons, including but not limited to information regarding: the reasons for his admissions and treatment given; the purposes of the treatments being provided; the common risks, and/or benefits of surgery and treatments given; the common risks, side effects and benefits of the medication given, as well as the specific dosage range for the medications given; alternative available treatments; the approximate length of his care; the potential side effects of stopping treatment; and/or aftercare instructions, including information regarding any need to continue treatments or arrangements needed to be made for follow up care.

42.     As a result of the actions and/or inactions of Lincoln Medical Center and its physicians or staff, Mr. Rapa was denied the same opportunities that are readily and routinely provided to hearing persons to make decisions regarding treatments and/or to give consent to such treatments.

43.     Mr. Rapa, as a resident of neighboring Bronxville, expects to have future encounters the New York City Police Department, whether by choice or necessity, as he frequently visits the City and has many ties to the City.

44.     Mr. Rapa is deterred from seeking the aid or protection of the NYPD due to the discrimination he expects to face if he does so.

45.     Similarly, as Lincoln Medical Center is located close to his home, Mr. Rapa reasonably expects to seek its medical services in the future, whether by choice or necessity.

46.     Mr. Rapa is deterred from seeking the services of Lincoln Medical Center due to the discrimination he expects to face if he does so.

47.     Defendants intentionally discriminated against Mr. Rapa and acted with deliberate indifference to his communication needs, causing him to endure humiliation, shame, fear, anxiety, and emotional distress.

## COUNT ONE: VIOLATIONS OF THE UNITED STATES CONSTITUTION AGAINST THE CITY OF NEW YORK AND OFFICER JOSE ALMONTE

48.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

49.     At all times relevant to this action, 42 U.S.C. § 1983 was in full force and effect and applied to Defendants' conduct.

50.     42 U.S.C. § 1983 provides: "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress."

51.     Plaintiff in this action is a citizen of the United States and the identified Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

52.     Defendants acted under color of statute, ordinance, regulation, policy, custom, and/or usage of law.

53.     Defendants subjected Plaintiff to unreasonable search and seizure and deprived Plaintiff of his liberty and property without due process of law, in violation of 42 U.S.C. § 1983.

54.     The City of New York discriminated against Plaintiff by demonstrating deliberate indifference to his rights, by failing to train its officers, and by failing to modify discriminatory practices and procedures.

55.     Plaintiff is therefore entitled to compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to 42 U.S.C. §§ 1983 and 1988 and/or common law.

## COUNT TWO: AMERICANS WITH DISABILITIES ACT VIOLATIONS AGAINST THE CITY OF NEW YORK AND NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

56.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

57.     At all times relevant to this action, Title II of the ADA, 42 U.S.C. §§ 12131 et seq., was in full force and effect and applied to Defendants' conduct.

58.     At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, were in full force and effect and applied to the Defendants' conduct.

59.     At all times relevant to this action, Mr. Rapa has been substantially limited in the major life activities of hearing and speaking, and is considered an individual with a disability as defined in the ADA, 42 U.S.C. § 12102(2).

60.     Defendants are public entities as defined under Title II of the ADA, 42 U.S.C. § 12131(1).

61.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

62.     Federal Regulations implementing Title II of the ADA state that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit

from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

63.     Federal Regulations implementing Title II of the ADA state that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

64.     Federal Regulations implementing Title II of the ADA state that "[a] public entity shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

65.     Federal Regulations implementing Title II of the ADA state that "a public entity shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available." 28 C.F.R. § 35.160(c).

66.     Defendants discriminated against Mr. Rapa on the basis of disability by excluding him from participation in and denying him the benefits of their services, and by subjecting him to discrimination, in violation of the ADA.

67.     Defendants further discriminated against Mr. Rapa by failing to ensure effective communication through the provision of a qualified in-person interpreter.

68.     Defendant The City of New York further discriminated against Mr. Rapa by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the ADA.

69.     Defendant New York City Health and Hospitals Corporation further discriminated against Mr. Rapa by failing to train its staff and employees to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the ADA.

70.     Plaintiff is therefore entitled to compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the ADA, 42 U.S.C. § 12133.

## COUNT THREE: REHABILITATION ACT VIOLATIONS AGAINST THE CITY OF NEW YORK AND NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

71.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

72.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, was in full force and effect and applied to the Defendants' conduct.

73.     At all times relevant to this action, United States Department of Health and Human Services (HHS) regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, were in full force and effect and applied to the Defendants' conduct.

74.     At all times relevant to this action, Mr. Rapa has had substantial impairment to the major life activities of hearing and speaking within the meaning of 45 C.F.R. § 84.3(j), and accordingly, he is individual with a disability as defined under 29 U.S.C. § 708(20)(B).

75.     Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

76.     Defendants discriminated against Mr. Rapa on the basis of disability by denying him meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act.

77.     Defendants further discriminated against Mr. Rapa by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

78.     Defendant The City of New York further discriminated against Mr. Rapa by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the Rehabilitation Act.

79.     Defendant New York City Health and Hospitals Corporation further discriminated against Mr. Rapa by failing to train its staff and employees to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the Rehabilitation Act.

80.     Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the Rehabilitation Act, 29 U.S.C. § 794.

## COUNT FOUR: NEW YORK HUMAN RIGHTS LAW VIOLATIONS AGAINST THE CITY OF NEW YORK AND NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

81.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

82.     At all times relevant to this action, the New York Human Rights Law (NYHRL), N.Y. Exec. L. § 290, et seq., was in full force and effect and applied to Defendant's conduct.

83.    At all times relevant to this action, Mr. Rapa has had significant hearing impairment, and has therefore been a person with a disability within the meaning of N.Y. Exec. L. § 292(21).

84.    At all times relevant to this action, Defendants' facilities have been places of public accommodation within the meaning of N.Y. Exec. L. § 292(9).

85.    Pursuant to N.Y. Exec. L. § 296(2)(a), it shall be unlawful discrimination "for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

86.    Pursuant to N.Y. Exec. L. § 296(2)(c), discrimination includes "refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities."

87.    Plaintiff is an aggrieved person within the meaning of N.Y. Exec. L. § 297(9), which extends a cause of action and relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his or her disability.

88.    Defendants discriminated against Mr. Rapa on the basis of his disability by withholding the accommodations, advantages, facilities or privileges of Defendants' services, in violation of N.Y. Exec. L. § 296(2)(a), and by failing to accommodate Plaintiff's disability in violation of N.Y. Exec. L. § 296(2)(c).

89.    Defendants further discriminated against Mr. Rapa by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

90.     Defendant The City of New York further discriminated against Mr. Rapa by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the NYHRL.

91.     Defendant New York City Health and Hospitals Corporation further discriminated against Mr. Rapa by failing to train its staff and employees to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the NYHRL.

92.     Plaintiff is therefore entitled to seek and recover compensatory damages, for the injuries and loss sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, pursuant to N.Y. Exec. L. § 297(9).

## COUNT FIVE: NEW YORK CITY HUMAN RIGHTS LAW VIOLATIONS AGAINST ALL DEFENDANTS

93.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

94.     At all times relevant to this action, the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-101, et seq., was in full force and effect and applied to Defendants' conduct.

95.     At all times relevant to this action, Mr. Rapa had a significant hearing impairment and has been a person with a disability within the meaning of N.Y.C. Admin. Code § 8-102(16).

96.     At all times relevant to this action, Defendants have been both "persons" and "covered entities" as defined in N.Y.C. Admin. Code §§ 8-102(1), (17).

97.     Pursuant to N.Y.C. Admin. Code § 8-107(4), it shall be unlawful discrimination for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

98.     Pursuant to N.Y.C. Admin. Code § 8-107(15)(a), a covered entity "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

99.     Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his or her disability.

100.    Defendants discriminated against Mr. Rapa on the basis of disability by withholding the accommodations, advantages, facilities or privileges of Defendants' services, in violation of N.Y.C. Admin. Code § 8-107(4), and by failing to accommodate his disability in violation of N.Y.C. Admin. Code § 8-107(15)(a).

101.    Defendants further discriminated against Mr. Rapa by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

102.    Defendant The City of New York further discriminated against Mr. Rapa by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the NYCHRL.

103.    Defendant New York City Health and Hospitals Corporation further discriminated against Mr. Rapa by failing to train its staff and employees to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the NYCHRL.

104.    Plaintiff is therefore entitled to seek and recover compensatory damages, for the injuries and loss sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged, pursuant to N.Y.C. Admin. Code § 8-502(a).

105.    Plaintiff is further entitled to an award of punitive damages pursuant to N.Y.C. Admin. Code § 8-502(a).

106.    Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.Y.C. Admin. Code § 8-502(g).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendants:

A.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the New York Human Rights Law, and the New York City Human Rights Law;

B.    Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendant's facilities, services or programs;

C.    Order The City of New York and New York City Health and Hospitals Corporation:

i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to

effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all situations;

vi. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vii. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, the New York Human Rights Law, and the New York City Human Rights Law;

D.      Award to Plaintiff:

i. Compensatory damages pursuant to 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, the New York Human Rights Law, and the New York City Human Rights Law;

ii. Punitive damages pursuant to the New York City Human Rights Law;

iii. Reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988, the ADA, Section 504 of the Rehabilitation Act, and the New York City Human Rights Law;

iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v. Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

107.    Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Respectfully submitted,

EISENBERG & BAUM, LLP

By: _____
Andrew Rozynski, Esq. (AR-3228)
arozynski@eandblaw.com
Attorneys for Plaintiffs
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700

Dated: March 13, 2015