```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
ROBERT G. RAPA,                                                   :
                                                                  :
                              Plaintiff,                          :    15-CV-1916 (JMF)
                                                                  :
                -v-                                               :    MEMORANDUM OPINION
                                                                  :         AND ORDER
THE CITY OF NEW YORK, et al.,                                     :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Robert Rapa, who is deaf and whose primary means of communication is American Sign Language ("ASL"), sues the City of New York, New York City Health and Hospitals Corporation, and a New York City police officer pursuant to Title 42, United States Code, Section 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.* According to the Complaint — which is assumed to be true for purposes of this motion, *see, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) — Plaintiff's claims arise from his arrest on April 1, 2014. On that date, Plaintiff was robbed while visiting the Bronx from his home in Bronxville. (Compl. ¶¶ 4, 18). Plaintiff then went to the 41st Precinct of the New York City Police Department ("NYPD") to report the robbery and gestured for police officers to return to the scene of the crime. (*Id.* ¶ 21). When police officers arrived at the scene, however, the robber falsely accused Plaintiff of attempting to break into her apartment and, due to Plaintiff's inability to communicate with the police officers (who did not know ASL), he was arrested based on her accusations. (*Id.* ¶¶ 23-24). Plaintiff was then taken to the 41st Precinct and held in custody. (*Id.* ¶ 26). He was never provided with an ASL interpreter or any

other accommodation to facilitate communication with the officers.  (*Id.* ¶ 27).  During his incarceration, Plaintiff attempted to inform officers that he required medication, but the officers did not assist him.  (*Id.* ¶ 31).  As a result, Plaintiff began to shake uncontrollably and was eventually transported to Lincoln Medical Center.  (*Id.* ¶¶ 32-33).  Lincoln Medical Center also failed to procure an interpreter or otherwise accommodate Rapa's disability, and as a result Plaintiff was unable to consent to the treatment he was provided.  (*Id.* ¶¶ 34-35).

Defendants now move, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for partial judgment on the pleadings — specifically, to dismiss Plaintiff's request for injunctive relief on the ground that he lacks standing to seek it. (Docket No. 19).  The "irreducible constitutional minimum of standing" requires that a complaint sufficiently allege (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) redressability of the injury by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  It is well established that, to have standing to pursue injunctive relief, which is a forward-looking remedy, a plaintiff may not rely on past injury alone; instead, a plaintiff must show a likelihood of future injury.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *Knife Rights, Inc. v. Vance*, No. 13-4840-CV, — F.3d —, 2015 WL 5559751, at *4-5 (2d Cir. Sept. 22, 2015).  For complaints seeking injunctive relief under the ADA, the Second Circuit has found standing where "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue, and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [the accommodation] to plaintiff's home, that plaintiff intended to return to the subject location."  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d. Cir. 2013).

Applying those standards here, Defendants' motion is granted, substantially for the reasons stated in Judge Valerie Caproni's thorough and well-reasoned opinion in *Williams v. City of New York*, 34 F. Supp. 3d 292 (S.D.N.Y. 2014), which addressed a nearly identical claim. Like the plaintiff in *Williams*, Plaintiff here does not plead facts sufficient to support a reasonable inference that he will suffer the injury complained of again in the future. *See, e.g.*, *Lyons*, 461 U.S. at 105-08 (concluding that past injury at hands of police, "while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat" of future injury); *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (holding that the inference of future injury in a suit against the police was "too speculative and conjectural to supply a predicate for prospective injunctive relief"). The only allegations of future injury contained in the Complaint indicate that Plaintiff, "as a resident of neighboring Bronxville, expects to have future encounters [with] the New York City Police Department, whether by choice or necessity, as he frequently visits the City." (Compl. ¶ 43). He also alleges that he is "deterred from seeking the aid or protection of the NYPD due to the discrimination he expects to face if he does so." (*Id.* ¶ 44). Plaintiff makes essentially the same allegations regarding Lincoln Medical Center, alleging that it is located near his home, he "expects to seek its medical service in the future," and that he is currently deterred from seeking its services. (*Id.* ¶¶ 45-46). The Complaint references only one past incident of injury, namely the arrest, detention, and hospitalization that occurred in April 2014. "Although there is certainly some chance that the Plaintiff *might* find [himself] arrested again by police officers who do not offer [him] a sign language interpreter" — or suffer similar treatment at Lincoln Medical Center — "that is the same speculative chance that the Supreme Court in *Lyons* and the Second Circuit in *Shain* found insufficient to confer standing." *Williams*, 34 F. Supp. 3d

3

at 297.  "To find that Plaintiff is likely to suffer future harm" from either the NYPD or Lincoln Medical Center (let alone from the individual police officer named as a Defendant) would "require conjecture and speculation, which is not permissible under established precedent."  *Id.*

As noted in *Williams*, the Supreme Court's decision in "*Lyons* 'occupies much of th[e] territory' related [to] a citizen's standing to seek an injunction against police practices surrounding arrests."  *Id.* at 296 (quoting *Shain*, 356 F.3d at 215 (2d Cir. 2004)).  Plaintiff's attempts to distinguish his case from *Lyons* (and *Williams*) are unpersuasive.  Plaintiff argues that the Court "should be reluctant to apply *Lyons* here" because "the plaintiff in *Lyons* sought a preliminary injunction, something that is not at issue here" and because the chokeholds at issue in *Lyons* were "aberrational" whereas the NYPD's failure to provide interpreters is common practice.  (Pl.'s Mem. Opp'n Defs.' Mot. Partial J. Pleadings (Docket No. 22) ("Pl.'s Mem.") 8-9).  But nothing in *Lyons* suggests that either of those distinctions should make a difference.  Lyons' lack of standing ultimately rested on "the speculative nature of his claim that he will again experience injury as the result of [the challenged] practice even if continued."  461 U.S. at 109.  The same is true here: Given that Plaintiff does not live in New York City and has alleged only a single incident of past discrimination at the hands of Defendants, his bare allegation that he "expects" to interact with the NYPD and Lincoln Medical Center during a visit to the City in the future (*see* Compl. ¶¶ 43-46), is not enough to establish the requisite likelihood of future injury.  *See Williams*, 34 F. Supp. 3d at 296-97 (holding that a plaintiff failed adequately to allege likely future injury on nearly identical facts).

Plaintiff suggests that this result is somehow in tension with the standard articulated by the Supreme Court in *Monell v. New York City Department of Social Services*, 463 U.S. 658 (1978), because "factual allegations that, if proven, may entitle a plaintiff to an injunction under

4

*Monell* fall short of what that same plaintiff must plead simply to have her request for injunctive relief heard on the merits under *Lyons*." (Pl.'s Mem. 7). But there is nothing anomalous in that result. *Monell* is a creature of statutory interpretation that limits when a municipality may be held directly liable under Section 1983 — be it for "monetary, declaratory, or injunctive relief" — for an unconstitutional act committed by one of its officers. *See Los Angeles County v. Humphris*, 562 U.S. 29, 35-38 (2010). The standing inquiry, rather than focusing on the conduct of the party being sued, requires "a plaintiff to 'allege[] such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Knife Rights*, 2015 WL 5559751, at *4 (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). That a municipality might have a "policy or practice" that causes its officers to commit unconstitutional acts does not mean that any citizen that might conceivably be subjected to that policy has standing to seek an injunction against it in federal court. It is thus entirely consistent that a plaintiff might simultaneously present allegations that would satisfy *Monell*'s "policy or practice" standard, yet still lack a sufficient "personal stake" in that "policy or practice" to justify the bringing of a suit to enjoin it.

In short, well-established precedent from the Supreme Court and the Second Circuit require dismissal of Plaintiff's claims for injunctive relief for lack of standing. Accordingly, Defendants' motion for partial judgment on the pleadings is GRANTED. The Clerk of Court is directed to terminate Docket No. 19.

SO ORDERED.

Date: September 25, 2015
      New York, New York

_____
JESSE M. FURMAN
United States District Judge